UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CARLOS AUGUSTO LOPES,

        Plaintiff,                                   Index No.: 07 CIV 5928
   -against-                                            (DLC)

MELLON INVESTOR SERVICES LLC, JP MORGAN
CHASE & CO., WACHOVIA CORPORATION,
WACHOVIA BANK, N.A., WACHOVIA/FIRST
UNION BANK, HELENA BUSHROE, JOHN DOE
AND JANE ROE,

        Defendants.
------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT**
**OF WACHOVIA'S MOTION TO DISMISS**


                                              ROSNER NOCERA & RAGONE, LLP
                                              Attorneys for Defendant,
                                              Wachovia Bank, N.A.
                                              110 Wall Street - 23rd Floor
                                              New York, New York 10005
                                              (212) 635-2244


Of Counsel:

John A. Nocera
John P. Foudy

## **TABLE OF CONTENTS**

**PAGE**

**TABLE OF AUTHORITIES**..................................................................................................ii

**PRELIMINARY STATEMENT**...........................................................................................2

**STATEMENT OF FACTS**.....................................................................................................2

**POINT I**    :    DEFENDANT WACHOVIA IS ENTITLED TO A
                   DISMISSAL OF PLAINTIFF'S CLAIMS PURSUANT TO
                   FRCP 12 (b)(6)..........................................................................................4

**POINT II**   :    A PAYEE WHO NEVER RECEIVED DELIVERY OF A CHECK
                   CANNOT MAINTAIN SUIT UPON SUCH CHECK…...............................6

                   (a) LEGAL EFFECT OF LACK OF DELIVERY OF A CHECK…...................6

                   (b) CHOICE OF LAW ISSUES AND APPLICABLE LAW….........................8

**POINT III**  :    PLAINTIFF'S REMEDIES AGAINST WACHOVIA ARE
                   GOVERNED BY THE 1990 UNIFORM COMMERCIAL CODE, WHICH
                   PRECLUDES PLAINTIFF'S ALLEGED COMMON LAW CLAIMS.............12

**CONCLUSION**:    ........................................................................................................14

# Table of Authorities

**CASES**

Arkwright Mut. Ins. Co. v. State Street Bank & Trust Co., 703 N.E.2d 217 (Mass.1998)..........................12

Cartwood Construction Company, Inc. v. Wachovia Bank & Trust Company, 84 N.C. App. 245, 352 S.E.2d 241 (1987) aff'd 320 N.C. 164, 357 S.E.2d 373 (1987)..................................................................13

Gallery Garage Management Corp., v. Chemical Bank, 226 A.D.2d 305, 642 N.Y.S.2d 217 (1st Dept. 1996).........................................................................................................................................................7

First Investors Corp. v. Citizens Bank, Inc., 1992 WL 36812 (4th Cir. 1992), aff'g 757 F.Supp. 687, (W.D. N.C. 1991),..................................................................................................................................13

Gress v. PNC Bank, 100 F.Supp.2d 289 (E.D. Pa. 2000)............................................................................12

Halla v. Norwest Bank Minnesota, 601 N.W.2d 449 (Minn. Ct. App. 1999).............................................12

Leatherman v. Tarrant County Narcotics Intelligence Unit, 507 U.S. 163, 119 S. Ct. 1160, (1993)...........5

Roy Supply Inc. v. Wells Fargo Bank, 39 Cal. App. 4th 1051 (Cal. Ct. App. 1995)....................................12

State of New York v. Barclays Bank of New York, N.A., 76 N.Y.2d 533, 561 N.Y.S.2d 697 (1990).........6

Tellabs, Inc. v. Makor Issues & Rights Ltd, 127 S.Ct. 2499, 168 L. Ed 2d 179, 2007)................................5

**Statutes**

UCC 3-419(1)(c).....................................................................................................................................6,7,10
UCC § 3-420 ........................................................................................................................................8,9,10,12
CPLR § 3211 (a)(7)........................................................................................................................................6

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted on behalf of defendant Wachovia Bank, N.A., ("Wachovia") also incorrectly sued herein as Wachovia Corporation and Wachovia/First Union Bank (hereinafter collectively referred to as "Wachovia") in support of Wachovia's motion, pursuant to F.R.C.P. 12(b)(6), to dismiss the plaintiff's Complaint as against Wachovia.

**STATEMENT OF FACTS**

The facts are set forth in the supporting affidavits of Wachovia by Tim Merck, sworn to on the 11th day of September, 2007 ("Merck Affidavit") and of Wachovia's counsel, John A. Nocera, sworn to the 24th day of September, 2007 (the "Nocera Affidavit"), and in the exhibits annexed to the foregoing. The pertinent facts are as follows:

Plaintiff sues Wachovia upon a check payable to plaintiff as payee, which was deposited at Wachovia and paid over plaintiff's alleged forged endorsement. The check was dated July 1, 2004, was drawn upon defendant JP Morgan Chase Bank ("Chase") by co-defendant Mellon Investor Services, LLC ("Mellon"), in the amount of $95,563.43, and was made payable to plaintiff Carlos A. Lopes (hereinafter "the Check", annexed as Exhibit "1"). The Check was deposited at a Wachovia branch in Florida on July 27, 2004 (Merck Affid. ¶ 4). The Check was thereafter sent for collection through ordinary banking channels and was presented to and paid by defendant Chase in the normal course of business. (Id.)

The Check was paid almost three years prior to this action. The account at Wachovia where it was deposited was closed before this suit was filed. (Merck Affidavit ¶ 4). Wachovia retains no proceeds from the payment of the Check. (Id.)

In his complaint, plaintiff asserts that as a former employee of co-defendant Chase, he was the owner of 2,500 shares of Chase stock which were maintained for him in a securities account at defendant Mellon. Plaintiff, a domiciliary of Brazil, alleges that the Check was issued when "an imposter, purporting to be plaintiff…instructed Mellon to sell plaintiff's share account and send the proceeds of such sale to an address in Rio de Janeiro Brazil" (Complaint ¶ 15). Plaintiff also admits that "he did not receive any check and he had no relationship with any account at Wachovia Bank." (Complaint ¶ 19)

On November 16, 2005, well prior to the commencement of this case, plaintiff Lopes asserted claims against the co-defendant Mellon and executed an "Affidavit of Forgery Loss", wherein plaintiff swore under oath to Mellon that he had "not received the proceeds of said Check or any part thereof" (Ex. "4"). Plaintiff also asserted, with respect to a purported individual (defendant Helena Bushroe) who allegedly authorized the stock sale and received the Check, that: "I have never met nor heard of this person." (Ex. "4").

Approximately one year later, on October 29, 2006, plaintiff Lopes again wrote to defendant Mellon and asserted that "I did not request or authorize the sale of these

securities and <u>I have never received or negotiated any check</u> for the proceeds of any sale. (Ex. "4") (emphasis added).

It is admitted in plaintiff's Complaint and in Exhibit "4", plaintiff's signed and authenticated correspondence with Mellon[1], that plaintiff never received delivery of the Check. Accordingly, based on this undisputed fact, plaintiff cannot maintain this suit against Wachovia.

Wachovia is a national banking association duly organized and existing under the laws of the United States.  Wachovia maintains its principal place of business in the State of North Carolina.  (Merck Affid, ¶ 5).  Wachovia maintains offices and transacts business in the State of New York, but no New York office or branch of Wachovia was involved in the transactions complained of concerning the Check. (<u>Id</u>.) The Check was deposited at a Wachovia branch in Florida (<u>Id</u>.)

**POINT I**

**DEFENDANT WACHOVIA IS ENTITLED TO A
DISMISSAL OF PLAINTIFF'S CLAIMS PURSUANT TO
FRCP 12 (b)(6)**

The Complaint, based on apparent diversity of citizenship jurisdiction, alleges one cause of action against Wachovia in the "Second Statement of Claim Against Wachovia" (Ex. 2 at pp. 5-6). Plaintiff alleges that "Wachovia honored a check on the basis of a forged endorsement" and alternatively alleges that Wachovia was allegedly

---

[1] Nocera Affid, Ex. "4", consists of documents voluntarily produced by plaintiff's counsel from plaintiff's records.

"negligent" and "did not exercise due diligence" (Id. at ¶¶ 29-30).

Federal Rule of Civil Procedure, Rule 12 (b)(6) provides that a motion to dismiss a complaint may be brought, prior to serving a responsive pleading, if the complaint fails "to state a claim upon which relief can be granted."

The United States Supreme Court has held that courts must "with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true" <u>Tellabs, Inc. v. Makor Issues & Rights Ltd,</u> 127 S.Ct. 2499 at 2502, 168 L. Ed 2d 179, (2007). <u>See also:</u> <u>Leatherman v. Tarrant County Narcotics Intelligence Unit,</u> 507 U.S. 163, 119 S. Ct. 1160, (1993). Accordingly, solely for the purposes of this motion, and without waiving any rights or defenses, the following allegations in the Complaint are assumed to be established.

> 1. Plaintiff owned shares of stock in defendant Chase which were held/managed by defendant Mellon Investor Services (Complaint ¶¶ 9. 13 & 14).
>
> 2. An imposter, or other unauthorized individual, directed defendant Mellon to sell plaintiff's shares and issue the Check (Complaint ¶ 15).
>
> 3. Plaintiff never received delivery of the Check he sues upon. (Complaint ¶ 19).
>
> 4. The Check was deposited at defendant Wachovia. (Complaint ¶ 18).
>
> 5. Plaintiff did not have a relationship with Wachovia and never received any of the proceeds of the Check. (Complaint ¶ 19).

The above facts establish for the purposes of this motion, that an unauthorized

individual, acting as an "imposter", persuaded defendant Mellon to issue an unauthorized check, which was not delivered to plaintiff or to anyone acting on behalf of plaintiff.  As set forth in Point II infra, such facts alone establish, as a matter of law, that plaintiff cannot maintain his suit against Wachovia as a bank where the Check was deposited.

**POINT II**

**A PAYEE WHO NEVER RECEIVED DELIVERY OF A CHECK
CANNOT MAINTAIN SUIT UPON SUCH CHECK**

(a) **Legal Effect of Lack of Delivery of a Check**.

Plaintiff's admission that he never received delivery of the Check is fatal to his claim against Wachovia.  As one recognized treatise succinctly states the rule: "Delivery of a check is the final step necessary for the inception of the check as a binding contract and obligation" H.J. Bailey, *Brady on Bank Checks*, ¶ 502 (Rev. Ed. 2006).

As succinctly set forth by New York's Court of Appeals in State of New York v. Barclays Bank of New York, N.A., 76 N.Y.2d 533 at 537, 561 N.Y.S.2d 697 at 698 (1990), a payee who has never had possession of a check (such as plaintiff) cannot maintain an action against a depository bank (such as Wachovia).  The Court of Appeals in Barclays Bank, in affirming dismissal of an action pursuant to a motion for failure to state a cause of action under CPLR § 3211 (a)(7) and 3212 (analogous to FRCP 12 (b)(6), held that:

> either actual or constructive delivery to the payee is a
> necessary  prerequisite to a conversion action under section
> 3-419(1)(c) (see:; Papex Intl. Brokers v. Chase Manhattan
> Bank, [821 F. 2d 883 (1st Cir. 1987)]; Lincoln Natl. Bank &

    Trust Co. v. Bank of Commerce, 764 F.2d 392 [5th Cir.]; Winn v. First Bank, 581 S.W.2d 21 [Ky.App. 1978]; Caviness v. Andes & Roberts Bros. Constr. Co., 508 S.W.2d 253 [Mo.App.1974]; 1 White & Summers, Uniform Commercial Code § 15-5, at 757 [Practitioner's-3d ed. 1988] ["court(s) should not recognize a conversion cause of action for one who, though a payee on a check, has never received actual or constructive possession of that check"]; Bailey, Brady on Bank Checks, op. cit., § 27.8, at 27-23 [payee who has not received delivery of check cannot sue depository bank for converting it because "only a person with rights in the instrument may claim conversion"]).

Id. 76 N.Y.2d at 537, 561 N.Y.S.2d at 698. See also, Gallery Garage Management Corp., v. Chemical Bank, 226 A.D.2d 305, 642 N.Y.S.2d 217 (1st Dept. 1996) (payee never in possession of a check cannot maintain suit thereon against a depository bank).

  In this case, plaintiff specifically denies having received delivery of the Check sued upon. Accordingly, pursuant to the holding by the Court of Appeals in Barclay's Bank, supra, plaintiff cannot maintain suit against Wachovia on the Check and the complaint should be dismissed as against Wachovia.

  It does not matter whether plaintiff characterizes his action as one for conversion under New York § UCC 3-419, or as being grounded in "negligence", or "lack of due diligence". Since the "checks were never actually or constructively delivered to plaintiff. [Plaintiff] therefore, never acquired a property interest in them and cannot be said to have suffered a loss." State of New York v. Barclays Bank, supra, 76 N.Y.2d at 540, 561 N.Y.S.2d at 701.

(b) **Choice of Law Issues and Applicable Law**

While plaintiff sues in New York, the Check was deposited at a Wachovia branch located in the State of Florida. Wachovia, as a national bank, maintains its principal place of business in the State of North Carolina. With respect to the law governing a bank's potential liability in such matters, the conflicts of law provision in the Uniform Commercial Code, and in New York's Uniform Commercial Code, N.Y. U.C.C. § 4-102(2) sets forth as follows:

> (2) The liability of a bank for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by <u>the law of the place where the bank is located.</u> In the case of action or non-action by or at a branch or separate office of a bank, its liability is governed by <u>the law of the place where the branch is separate office is located</u>.

(emphasis added)

Accordingly, any claim of liability against Wachovia is governed either by the place where the bank is located (North Carolina) or by the location where the Check was deposited (Florida). The law in either of these states is the same.

After the decision in <u>State of New York v. Barclays Bank,</u> cited above, both Florida and North Carolina enacted a revised (1990) version of the UCC, which New York has not yet adopted. However, the <u>State of New York v. Barclay's Bank</u> holding has been codified in the revised 1990 UCC at Section 3-420, as reflected in Florida Statutes 673.4201 (UCC § 3-420 [rev.]) which provides as follows:

8

>**673.4201 Conversion of instrument.**
>
>(1)  The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. <u>An action for conversion of an instrument may not be brought by:</u>
>
> ***
>
>(b)  <u>A payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.</u>

(emphasis added)

The Official Comment to UCC § 3-420 (1990) explains that:

>In revised Article 3, under the last sentence of Section 3-420(a), the payee has no conversion action because the check was never delivered to the payee. <u>Until delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check</u>.  Section 3-301.  Nor is the payee injured by the fraud.  Normally the drawer of a check intends to pay an obligation owed to the payee.  But if the check is never delivered to the payee, the obligation owed to the payee is not affected.  If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment.  <u>Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief there is no reason to give any additional remedy to the payee.</u>

(emphasis added)

North Carolina has also adopted § 3-420 of the 1990 UCC, identical in all respects to the above cited Florida statute.  <u>See,</u> North Carolina Gen Stat. § 25-3-420.

Accordingly, plaintiff's complaint fails to state a viable cause of action, since a

payee such as plaintiff Lopes, who admittedly never received delivery of the check he sues upon, has no right of recovery against a bank which took such check for deposit.

Although plaintiff cannot sue Wachovia on the Check at issue, this result does not leave plaintiff without a remedy for his alleged loss.  Assuming plaintiff did not authorize Mellon to sell his shares and issue the Check, then in such event, plaintiff can still assert a claim on the obligation which is owed to plaintiff by Mellon as the drawer of the Check.  As the Official Comment to UCC § 3-420 notes, any such obligation is "unaffected by the fraud of the thief" (Id.).  Indeed, it is precisely because non-delivery of an allegedly fraudulent instrument raises the spectre of numerous other issues involving the payee (Lopes) and the drawer of the Check (Mellon), that a payee is relegated, as a matter of law, to pursuing the underlying claim against the drawer of the check who never managed to deliver it to the payee.  As the Court of Appeals explained in Barclay's Bank, supra:

> Nor are we persuaded by plaintiff's suggestion that permitting a suit under UCC 3-419(1)(c) by a payee not-in-possession would promote judicial economy and avoid circuity of action. On the contrary, relegating such a payee to a suit against the drawer on the underlying obligation would give full effect to the UCC's loss allocation scheme by furthering the aim of placing ultimate responsibility on the party at fault through an orderly process in which each defendant in the transactional chain may interpose the defenses available to it (see, Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 165, 544 N.Y.S.2d 573, 542 N.E.2d 1090; Prudential-Bache Sec.v. Citibank, 73 N.Y.2d 263, 269, 539 N.Y.S.2d 699, 536 N.E.2d 1118; 1 White & Summers, *op. cit.*, §§ 15-1-15-5, 16-7; see also, SOS Oil Corp. v. Norstar Bank, 76 N.Y.2d 561, 571-572, 561 N.Y.S.2d 887, 563 N.E.2d 258 [decided today] ).

> And requiring a payee-not-in-possession to sue the drawer on the underlying claim would actually avoid circuity of action in some instances-for example, where the drawer's suit against the drawee bank is barred by valid defenses (*see,* UCC 3-406, 4-406) or where the drawer has an effective defense against the payee's claim.

State of New York v. Barclay Bank, 76 N.Y.2d at 538 to 539, 561 NYS 2d 97 at 699 to 700, supra.

The facts of this case illustrate the reasons for such a rule. Plaintiff Lopes claims that Mellon was allegedly negligent in allowing an unauthorized person to request the sale of his Chase stock and in delivering the Check to an "imposter." These are exactly the type of claims which the Court of Appeals in Barclay's Bank, supra, required a payee, who did not receive delivery of a Check, to assert against the drawer. As that Court explained:

> Significant practical considerations support this conclusion. Where a payee has never possessed the check, it is more likely that the forged indorsement resulted from the drawer's negligence, an issue which could not be readily contested in an action between the payee and the depositary bank (see, Papex Intl. Brokers v. Chase Manhattan Bank, supra, at 886; Lincoln Natl. Bank Trust Co. v. Bank of Commerce, supra, at 398). Moreover, as noted by the Appellate Division, the payee is not left without a remedy, inasmuch as it can sue on the underlying obligation (*see,* UCC 3-802[1][b]; Papex Intl. Brokers v. Chase Manhattan Bank, supra, at 885).

State of New York v. Barclay 76 NY 2d at 537, 561 NYS 2d at 698, supra.

POINT III

PLAINTIFF'S REMEDIES AGAINST WACHOVIA ARE
GOVERNED BY THE 1990 UNIFORM COMMERCIAL CODE, WHICH
PRECLUDES PLAINTIFF'S ALLEGED COMMON LAW CLAIMS

Plaintiff includes in his Complaint allegations that Wachovia allegedly failed to exercise "due diligence" (Complaint ¶ 30[b]) or that Wachovia was allegedly "negligent" (Complaint ¶ 30(c).  However any such common law causes of action for "negligence" are precluded by the 1990 UCC (and were also foreclosed by the holding of the Court of Appeals in State of New York v. Barclay's Bank, supra.)

The 1990 version of the UCC, applicable in Florida and North Carolina, mandates that the UCC provisions are to provide an exclusive remedy with respect to claims involving the conversion of negotiable instruments.  See, Gress v. PNC Bank, 100 F.Supp.2d 289, 292 (E.D. Pa. 2000) (dismissing all common law claims, including negligence and conversion, rooted in allegations of wrongful payment of a check based on a forged signature or indorsement because the 1990 codification of UCC § 3-420 was intended "to provided exclusive regulations to govern the unauthorized payment of negotiable instruments"); Halla v. Norwest Bank Minnesota, 601 N.W.2d 449, 451 (Minn. Ct. App. 1999) (UCC does not permit claimant to bring common law claim for conversion of a negotiable instrument); Arkwright Mut. Ins. Co. v. State Street Bank & Trust Co., 703 N.E.2d 217, 200 (Mass. 1998) (holding that strong policy of commercial finality requires that common law negligence claims be supplanted by the UCC); Roy

12

Supply Inc. v. Wells Fargo Bank, 39 Cal. App. 4th 1051 (Cal. Ct. App. 1995) (finding conversion and negligence common law actions concerning forged checks to be displaced by UCC).

A case on point arose under the UCC in North Carolina. In Cartwood Construction Company, Inc. v. Wachovia Bank & Trust Company, 84 N.C. App. 245, 250, 352 S.E.2d 241, 244 (1987) aff'd 320 N.C. 164, 357 S.E.2d 373 (1987), plaintiff sued a bank for conversion and negligence, because a third-party deposited checks payable to the plaintiff, but not signed by plaintiff, into the third-party's account at the bank. Id., 84 N.C. App. at 246-47, 352 S.E.2d at 242. In Cartwood, the North Carolina Court of Appeals held that a bank's allegedly wrongful acceptance of checks for deposit into a third-party's account did not "give rise to a separate action for negligence" because such duties "are specifically defined" by the UCC. Id., 84 N.C. App. at 244, 352 S.E.2d at 250.

Also pertinent to plaintiff's claims under North Carolina law is First Investors Corp. v. Citizens Bank, Inc., 1992 WL 36812, *2 (4th Cir. 1992), aff'g 757 F.Supp. 687, 689 (W.D. N.C. 1991), wherein a plaintiff claimed that a bank was negligent in allowing checks to be deposited into an account which allegedly had been opened without a proper corporate resolution or signature card. First Investors Corp., supra, 1992 WL 36812 at *1.

Both the plaintiff in First Investors Corp., and plaintiff Lopes herein, claimed that

the bank allowed checks to be deposited with unauthorized endorsements into an account which had allegedly been opened for such purpose. See, First Investors, supra, 1992 WL 36812 at *1, and Lopes Complaint, Ex. 2, at ¶ 30. The court in First Investors Corp. held that there was no common law claim available sounding in negligence, because a bank's responsibilities and a plaintiff's remedies in such circumstances are specifically governed by North Carolina's UCC provisions regarding conversion of negotiable instrument. Id. at *2. Plaintiff's argument in First Investors that its claim "involved more than handling of the instruments" was considered legally insufficient and did not create a separate common law negligence claim. Id. Likewise in this case, any claim by plaintiff Lopes that Wachovia was purportedly negligent or allegedly acted without due diligence in allowing an account to be used for the deposit of this Check, while not admitted, is legally insufficient to support any separate claim which plaintiff couches in negligence or otherwise.

## CONCLUSION

Based upon the authorities cited above, defendant Wachovia Bank, National Association, respectfully requests that its motion pursuant to Fed R.C.P. 12 (b) (6) to dismiss the complaint as to Wachovia, and the Second Statement of Claim asserted as against Wachovia, be granted in all respects, with costs and disbursements, together with other appropriate relief under the circumstances.

Dated:   New York, New York
         September 24, 2007

                                                Respectfully submitted,

                                                ROSNER NOCERA & RAGONE, LLP

                                                By: __\S\John A. Nocera_____
                                                        John A. Nocera (JN-3399)
                                                Attorneys for Wachovia
                                                110 Wall Street – 23rd Floor
                                                New York, New York 10005
                                                (212) 635-2244
                                                Jnocera@RNRLawGroup.com

cs.Lopes.memo

09/07